UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

CITIBANK, N.A. )
)
Plaintiff, )
)
v. )   Case No. 1:13-cv-01007 (LMB/IDD)
)
TPI GROUP, INC., *et al.*, )
)
Defendants. )
_____)

FILED
MAR 2 5 2014
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## REPORT AND RECOMMENDATION

This matter is before the Court on Citibank, N.A.'s ("Plaintiff's") Motion for Default Judgment against TPI Group, Inc. ("TPI Group"), TPI Mortgage, Inc. ("TPI Mortgage"), TPI Financial, Inc. ("TPI Financial"), and Taxplus, Inc. ("Taxplus") (collectively referred to as "Defendants")[1], pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. (Dkt. No. 14.) After a licensed attorney for Defendants failed to appear at the hearing on October 25, 2013, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation. Upon consideration of the Complaint, the Motion for Default Judgment, the supporting affidavits and documentation thereto, and relevant portions of the underlying record, the undersigned Magistrate Judge recommends that Plaintiff's Motion be GRANTED.

## I.   INTRODUCTION

On August 15, 2013, Plaintiff filed a Complaint against Defendants seeking recovery based on Defendants' failure to repay amounts due on promissory notes and a business credit line. (Dkt. No. 1.) Plaintiff has moved for default judgment against Defendants and seeks to

---

[1] In addition to the four corporate entities, the Complaint named an individual guarantor, Morteza Ghalambor, as a Defendant. At the hearing on October 25, 2013, Plaintiff's counsel informed the Court that Morteza Ghalambor filed a Chapter 7 bankruptcy petition in the Eastern District of Virginia. Therefore, Plaintiff is not seeking default judgment against Morteza Ghalambor because of the stay resulting from his bankruptcy filing. *See* (Dkt. No. 17.)

recover monies owed including the unpaid principal amount of the loans, accrued and unpaid interest, late fees, prepayment fees (less applicable credits) and attorneys' fees, costs, and collection expenses. (Mot. Def. J. ¶ 6.) After Defendants failed to respond or appear at any proceedings, the undersigned Magistrate Judge took the matter under advisement to issue this Report and Recommendation.

### A.   Jurisdiction and Venue

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because diversity of citizenship exists between Plaintiff and Defendants, and the amount in controversy exceeds $75,000. Plaintiff is a nationally chartered bank with its principal place of business in South Dakota. (Compl. ¶ 1.) Defendant TPI Group is a Virginia corporation with its principal place of business in Vienna, Virginia, which is located within the Eastern District of Virginia. (Compl. ¶ 2; Dkt. No. 5.) Defendant TPI Mortgage is a Virginia corporation with its principal place of business in Vienna, Virginia, which is located within the Eastern District of Virginia. (Compl. ¶ 4; Dkt. No. 7.) Defendant TPI Financial is a Virginia corporation with its principal place of business in Vienna, Virginia, which is located within the Eastern District of Virginia. (Compl. ¶ 5; Dkt. No. 8.) Defendant Taxplus is a Virginia corporation with its principal place of business in Vienna, Virginia, which is located within the Eastern District of Virginia. (Compl. ¶ 6; Dkt. No. 6.) Further, the amount in controversy is $3,249,488.55. (Mot. Def. J. ¶¶ 1, 6.) Thus, because the parties are completely diverse, and the amount in controversy exceeds $75,000, the Court has valid subject matter jurisdiction over this matter.

This Court may exercise personal jurisdiction over Defendants pursuant to Va. Code § 8.01-328.1(A). Virginia's long-arm statute is a "single act statute" meaning that, in Virginia, only one business transaction is required to confer jurisdiction on its courts. *See I.T. Sales, Inc.*

*v. Dry*, 278 S.E.2d 789, 790 (Va. 1981); *John G. Kolbe, Inc. v. Chromodern Chair Co.*, 180 S.E.2d 664, 667 (Va. 1971). Defendant TPI Group, a Virginia corporation with its principal place of business within the Eastern District of Virginia, executed three commercial loan notes ("Notes") at its Vienna, Virginia location in favor of Plaintiff's bank for business purposes. (Compl. ¶¶ 10-12.) TPI Group also executed and delivered to Plaintiff a Business Credit Account Agreement ("Business Credit Agreement") in the original principal amount of $100,000.00. (Compl. ¶ 17.) Therefore, TPI Group transacted business within the Eastern District of Virginia. As additional security for repayment of the Notes, TPI Mortgage, TPI Financial, and Taxplus served as guarantors, and executed and delivered certain continuing guaranties at their Vienna, Virginia locations. (Compl. ¶ 16.) Therefore, TPI Mortgage, TPI Financial, and Taxplus also transacted business within the Eastern District of Virginia. (*See* Compl. ¶¶ 10-12, 16-17.)

Further, this Court may exercise personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(h). Under Rule 4(h), service upon a corporation, partnership, or other unincorporated association shall be effectuated "in the manner prescribed for individuals by subdivision (e)(1), or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process. . . ." Fed. R. Civ. P. 4(h). Individuals are properly served under subsection (e)(2) by delivering to the person a copy of the summons and the complaint. *Id.* at 4(e)(2). On August 16, 2013, a private process server served Morteza Ghalambor, authorized agent of Defendants, with a copy of the Summons, Complaint, exhibits and documents related thereto. (Dkt. Nos. 5-8.) Therefore, Plaintiff properly served Defendants pursuant to FRCP 4(h).

Similarly, venue is appropriate before this Court pursuant to 28 U.S.C. § 1391 because Defendants transacted business within the Eastern District of Virginia. (Compl. ¶¶ 10-12, 16-17.) All Defendants are Virginia corporations with their principal places of business located in Vienna, Virginia within the Eastern District of Virginia. (Compl. ¶¶ 2, 4-6; Dkt. Nos. 5-8.) The undersigned finds that this judicial district is the appropriate venue under 28 U.S.C. § 1391 because business transactions associated with all Defendants occurred within this district, and all Defendants' principal places of business are within this judicial district. Accordingly, subject matter jurisdiction, personal jurisdiction, and venue are satisfied in this action.

## B.     Service of Process

Under 29 U.S.C. § 1132(e)(2), service of process is proper in any district where a defendant resides or may be found. When a plaintiff fails to serve the defendant properly under federal or state law, a court lacks personal jurisdiction over the defendant and may not enter default judgment against him. *Omni Capital Int'l, Ltd. v. Wolff & Co.*, 484 U.S. 97, 104 (1987), *superseded by statute on other grounds*, Fed. R. Civ. P. 4(k), (stating that "[s]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served" (quoting *Miss. Publ'g Corp. v. Murphee*, 326 U.S. 438, 444-45 (1946))); *Cent. Operating Co. v. Util. Workers of Am.*, 491 F.2d 245, 249 (4th Cir. 1974) (reversing the district court's entry of default judgment against a non-resident defendant union because the court lacked personal jurisdiction where the plaintiff failed to effectively serve the union with summons and complaint).

Although § 1132(e) states where a defendant may be served, the Federal Rules of Civil Procedure provide the manner in which service must occur. Under Rule 4(h), service upon a corporation, partnership, or other unincorporated association shall be effectuated "in the manner

4

prescribed by Rule 4(e)(1) for serving an individual; or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ." Fed. R. Civ. P. 4(h).

On August 16, 2013, a private process server served Defendants with a true and correct copy of the Summons, Complaint, exhibits and documents related thereto. (Dkt. Nos. 5-8.) Morteza Ghalambor accepted service on behalf of all Defendants, as their registered agent designated to accept service. (Dkt. Nos. 5-8.) Therefore, Plaintiff properly served Defendants pursuant to Rules 4(h).

### C.    Grounds for Entry of Default

On August 15, 2013, Plaintiff filed a Complaint against Defendants seeking recovery based on Defendants' failure to repay a promissory note and business credit line. (Dkt. No. 1.) A private process server served Defendants on August 16, 2013. (Dkt. Nos. 5-8.) On September 11, 2013, after Defendants failed to respond, Plaintiff requested entry of default judgment as to Defendants (Dkt. No. 10), and the Clerk entered default against Defendants on September 16, 2013 (Dkt. No. 12). On October 4, 2013, Plaintiff filed this Motion for Default Judgment. (Dkt. No. 14.) This Court held a hearing on the matter on October 25, 2013. (Dkt. No. 16.) After Defendants failed to appear at the October 25, 2013 hearing, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation.

### II.    FINDINGS OF FACT

The undersigned Magistrate Judge makes the following findings of fact based on the Complaint, the Motion for Default Judgment, the memorandum and declarations in support thereof.

On November 19, 2007, Defendant, TPI Group, executed and delivered to Plaintiff three commercial loan notes, referred to as Note 201, 301, and 303 (collectively referred to as "Notes"). (Compl. ¶¶ 10-12; Compl. Ex. 1-3.) The Notes were in the original principal amount of $2,538,325.00, 1,431,499.00, and $715,724.00 respectively. (Compl. ¶¶ 10-12; Compl. Ex. 1-3.)

As security for repayment of Note 201, TPI Group executed and delivered to Plaintiff a Deed of Trust on real property known as 754 Elden Street, Unit 201, Herndon, Virginia. (Compl. ¶ 13.) Similarly, as security for repayment of Note 301, TPI Group executed and delivered to Plaintiff a Deed of Trust on real property known as 754 Elden Street, Unit 301, Herndon, Virginia. (Compl. ¶ 14.) Additionally, as security for repayment of Note 303, TPI Group executed and delivered to Plaintiff a Deed of Trust on real property known as 754 Elden Street, Unit 303, Herndon, Virginia. (Compl. ¶ 15.) (collectively referred to as "Deeds of Trust.") As additional security for repayment of the Notes, TPI Mortgage, TPI Financial, and Taxplus served as guarantors, and executed and delivered continuing guaranties. (Compl. ¶ 16.; Compl. Ex. 7-10.)

TPI Group then executed and delivered to Plaintiff a Business Credit Account Agreement ("Business Credit Agreement") in the original principal amount of $100,000.00. (Compl. ¶ 17; Compl. Ex. 11.) As additional collateral, TPI Group executed and delivered a second deed of trust on the real property known as 754 Elden Street, Units 201, 301, and 303, Herndon, Virginia. (Compl. ¶ 18.) TPI Mortgage, TPI Financial, and Taxplus also served as guarantors, and executed and delivered continuing guaranties for repayment of the business credit line. (Compl. ¶ 19; Compl. Ex. 14-16.)

6

Pursuant to the Notes and the Business Credit Agreement (collectively "Loans" or "Loan Documents"), TPI was required to make monthly principal and interest payments to Plaintiff. (Compl. ¶¶ 20, 22; Compl. Ex. 1-3, 11.)   Failure to make any payment under the Loans constituted default.   (Compl. ¶¶ 21, 23.)   In the event of default, Plaintiff was entitled to accelerate the balance under the Loans. (*Id.* ¶¶ 21, 23.) This would result in the entire principal sum, along with all unpaid and accrued interest and charges, as well as all expenses and costs (including, but not limited to, attorneys' fees), immediately due and payable. (*Id.* ¶¶ 21, 23.)

Defendant, TPI Group, failed to make monthly payments of principal and interest on the Notes in September, October, and November of 2008. (Compl. ¶ 24.) Additionally, Defendant, TPI Group, failed to make monthly payments of accrued interest and charges on the business credit line in September, October, and November of 2008. (Compl. ¶ 25.) Plaintiff notified TPI Group on November 25, 2008 by letters that it was in default under the terms of the Loans, and demanded that Defendants cure the defaults. (Compl. ¶ 26.) Defendants failed to cure either of the defaults, and on January 6, 2009, Plaintiff notified Defendants that the Loans were accelerated and payment of the accelerated balances was due. (Compl. ¶¶ 27-28.)

Plaintiff foreclosed on the Deeds of Trust on the real property known as 754 Elden Street, Units 201, 301, and 303, Herndon, Virginia. (Compl. ¶ 29.) On August 21, 2009, Plaintiff was the successful bidder at the foreclosure sale for the real property known as 754 Elden Street, Units 201, 301, and 303, Herndon, Virginia. (Walsh Decl. ¶ 5.) As of July 31, 2013, after crediting the amount paid at the foreclosure sale, the total amount outstanding under Note 201 was $1,685,549.66, with per diem interest in the amount of $360.96. (Compl. ¶ 32.) As of July 31, 2013, the total amount outstanding under Note 301 was $874,473.20, with per diem interest in the amount of $187.27. (Compl. ¶ 33.) As of July 31, 2013, the total amount outstanding

under Note 303 was $405,909.23, with per diem interest in the amount of $86.93. (Compl. ¶ 34.) And as of July 31, 2013, the total amount outstanding under the Business Credit Agreement was $121,326.27 with per diem interest in the amount of $16.04. (Compl. ¶ 35.)

In total, as of July 31, 2013, a combined sum of $3,087,258.36 was due under the Notes and Business Account Agreement, with a combined per diem interest rate of 651.20 per day from August 1, 2013. (Walsh Decl. ¶ 13.)

### III.   EVALUATION OF PLAINTIFF'S COMPLAINT

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." *See Music City Music,* et al., *v. Alfa Foods, Ltd.*, 616 F. Supp. 1001, 1002 (E.D. Va. 1985). Foremost, a court must be satisfied that the complaint states a legitimate cause of action. *See Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 506 (4th Cir. 1998) (holding that the district court erred in granting default judgment to the plaintiff where the plaintiff failed to state a claim). A defendant in default concedes the factual allegations of the complaint. *See, e.g., Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *see also Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006) (default has the effect of admitting factual allegations in the complaint). Default does not, however, constitute an admission of the adversary's conclusions of law, and is not to be "treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Ryan*, 253 F.3d at 780 (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Instead, the Court must "determine whether the well-pleaded allegations in [the plaintiff's] complaint support the relief sought in [the] action." *Id.*

8

Thus, in issuing this Report and Recommendation, the undersigned Magistrate Judge must evaluate Plaintiff's claims against the standards of Rule 12(b)(6) of the Federal Rules of Civil Procedure to ensure that the Complaint contains plausible claims upon which relief may be granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining the analysis for examining a plaintiff's claims under a 12(b)(6) motion to dismiss). To meet this standard, a complaint must set forth "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether allegations are plausible, the reviewing court may draw on context, judicial experience, and common sense. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 664).

## A. Breach of Negotiable Instruments

Plaintiff seeks to recover the remaining balance due on the Notes. (Compl. Prayer For Relief.) Under Virginia common law, breach of a promissory note is encompassed under a breach of contract claim. *See CIT Small Bus. Lending Corp. v. Core Holdings, LLC*, 2:12CV505, 2013 WL 711395, at *1 (E.D. Va. Feb. 7, 2013). To succeed on a breach of contract claim, a plaintiff must successfully plead the elements of breach of contract. *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004). Additionally, Virginia statutory law lists requirements for enforcement of a promissory note. Va. Code §§ 8.01-27, 8.3A-308, 8.3A-104.

First, to sufficiently allege a breach of contract claim, a plaintiff must allege that the defendant (1) had a legally enforceable obligation, (2) materially breached that obligation, and (3) such breach caused the plaintiff damage. *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004). A plaintiff must prove these damages with reasonable certainty; contingent, speculative, and uncertain damages are not recoverable. *Sunrise Continuing Care, LLC v. Wright*, 671 S.E.2d 132, 135 (Va. 2009); *see also Ulloa v. QSP, Inc.*, 624 S.E.2d 43, 48 (Va. 2006).

Under Virginia Code § 8.3A-104, a promissory note constitutes a "negotiable instrument." A "negotiable instrument" is defined as an unconditional promise to pay a fixed amount of money, with or without interest or other charges described in the promise, if it: (1) is payable to a bearer/to order at the time it is issued or first comes into possession of a holder; (2) is payable on demand or at a definite time; and (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money. Va. Code § 8.3A-104 (2013). To bring a civil action for enforcement of a note, pursuant to § 8.01-27, a promissory note must be signed by the charged party or his agent and an action may also be maintained on any note or writing for any past due installment on a debt payable in installments. Va. Code § 8.01-27 (2013); *see Core Holdings*, 2013 WL 711395, at \*3 (citing § 8.01-27 and recommending default judgment where the defendant corporation and its guarantors failed to make payments when due and ceased to operate the business financed under the terms of the promissory note); *CIT Small Bus. Lending Corp. v. Powerhouse, Alexandria*, et. al., 1:10CV133, 2010 WL 5187805, at \*1 (E.D. Va. Dec. 13, 2010) (citing § 8.01-27 and granting default judgment where the defendant corporation and its guarantors failed to make payments on a promissory note). Under § 8.3A-308, signatures on negotiable instruments are presumed valid, unless denied in the pleadings. *See Core Holdings*, 2013 WL 711395, at \*1.

Plaintiff has alleged sufficient facts to provide for a judgment against Defendants based on Defendant TPI Group's failure to fulfill its obligations under the Notes. Defendant, TPI Group, executed and delivered the Notes to Plaintiff. (Compl. ¶¶ 10-12; Compl. Ex. 1-3.) Thus, pursuant to Virginia Code §§ 8.3A-104 and 8.01-27, the Notes executed by the parties constituted negotiable instruments because they were payable to Defendant TPI Group and

signed by Defendant at the time of issuance, and do not state any other instruction by Plaintiff aside from repaying the loaned monies.

Defendants materially breached their obligation to Plaintiff by defaulting on payments due under the terms of the Notes. By the terms of the Notes, Defendants were in default when they failed to make monthly payments in September, October, and November of 2008 and as a result of acceleration were required to pay the entire amount of indebtedness immediately. (Compl. ¶¶ 20-21, 24, 26-28.)

Defendants breached their obligation to Plaintiff by failing to make the monthly payments due on the Notes, and such failure caused Plaintiff a substantial loss. Pursuant to the terms of all documents executed by Defendants, Defendants are liable to Plaintiff for all amounts due. Thus, under Virginia common and statutory law, the undersigned finds that Plaintiff has sufficiently pleaded that Defendants have defaulted on their obligations under the Notes.

### B. Breach of Business Credit Agreement

Plaintiff seeks to recover the remaining balance under the Business Credit Agreement. (Compl. Prayer For Relief.).   To recover against Defendants under the Business Credit Agreement, Plaintiff must allege a claim for breach of contract. *United States* ex rel. *ProBuild Co., LLC v. Scarborough*, No. 2:11CV451, 2012 WL 1571500, at *6 (E.D. Va. Apr. 11, 2012).

In Virginia, to sufficiently allege a breach of contract claim, a plaintiff must allege that the defendant (1) had a legally enforceable obligation, (2) materially breached that obligation, and (3) such breach caused the plaintiff damage. *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004). A plaintiff must prove these damages with reasonable certainty; contingent, speculative, and uncertain damages are not recoverable. *Sunrise Continuing Care, LLC v. Wright*, 671 S.E.2d 132, 135 (Va. 2009); *see also Ulloa v. QSP, Inc.*, 624 S.E.2d 43, 48 (Va. 2006).

11

Plaintiff has alleged sufficient facts to provide for a judgment against Defendants based on Defendant TPI Group's failure to fulfill its obligations under the Business Credit Agreement. TPI Group executed and delivered to Plaintiff a Business Credit Agreement in the original principal amount of $100,000.00. (Compl. ¶ 17; Compl. Ex. 11.)

Defendants materially breached their obligation to Plaintiff by defaulting on payments due under the terms of the Business Credit Agreement. By the terms of the Business Credit Agreement, Defendants were in default when they failed to make monthly payments in September, October, and November of 2008, and as a result of acceleration, were required to pay the entire amount of indebtedness immediately. (Compl. ¶¶ 22-23, 25-28.)

Defendants breached their obligation to Plaintiff by failing to make the monthly payments due on the Business Credit Account, and such failure caused Plaintiff a substantial loss. Pursuant to the terms of all documents executed by Defendants, Defendants are liable to Plaintiff for all amounts due. Thus, under Virginia common law, the undersigned finds that Plaintiff has sufficiently pleaded that Defendants have defaulted on their obligations under the Business Credit Agreement.

### C. Recovery on Personal Guaranties

"An action against a guarantor is independent from an action against the principal debtor." *Scarborough*, No. 2:11CV451, 2012 WL 1571500, at *7; *See McDonald v. Nat'l Enters., Inc.*, 547 S.E.2d 204, 207 (Va. 2001). To recover against guarantors, Plaintiff must allege (1) the existence and ownership of the guaranty contract; (2) the terms of the primary obligation and default on that obligation by the debtor; and (3) non-payment of the amount due from the guarantor under the terms of the guaranty contract. *McDonald*, 547 S.E.2d at 207.

As security for repayment of the Notes, TPI Mortgage, TPI Financial, and Taxplus served as guarantors, and executed and delivered continuing guaranties dated November 19, 2007. (Compl. ¶ 16.; Compl. Ex. 7-10.) Plaintiff attached a genuine and complete copy of the continuing guaranties to the Complaint as Exhibits 7 through 10. (Compl. Ex. 7-10.) TPI Mortgage, TPI Financial, and Taxplus also served as guarantors, and executed and delivered continuing guaranties for repayment of the business credit line. (Compl. ¶ 19; Compl. Ex. 14-16.) Plaintiff attached a genuine and complete copy of the continuing guaranties to the Complaint as Exhibits 14 through 16. (Compl. Ex. 14-16.) These facts establish the existence and ownership of guaranty contracts between Plaintiff and TPI Mortgage, TPI Financial, and Taxplus.

Plaintiff also attached as exhibits to the Complaint copies of the Notes and Business Credit Agreement that were signed by Morteza Ghalambor, President of TPI Group. (Compl. Ex. 1-3, 11.) By attaching the signed agreements and alleging that TPI Group has an outstanding balance under the Loans, Plaintiff has established the terms of the primary obligation and TPI Group's default.

By alleging that Defendants failed to pay the amounts owed by TPI Group upon demand from Plaintiff, and by providing the terms of the Notes, Business Credit Agreement, and continuing guaranty agreements, Plaintiff has sufficiently pled non-payment of the amounts due from the guarantors under the terms of the guarantor contracts.

The undersigned Magistrate Judge finds that Plaintiff has sufficiently pled claims for breach of contract against TPI Group and the right to recovery under a guaranty against TPI Mortgage, TPI Financial, and Taxplus.

13

## IV.   REQUESTED RELIEF

### A. Damages

The case law in this district provides that, in default cases, "there can be no recovery over the amount pled in the complaint, and that the complaint must pray for a specific monetary amount." *Sheet Metal Workers' Nat'l Pension Fund v. Frank Torrone & Sons, Inc.*, No. 1:04-cv-1109, 2005 WL 1432786, at *8 (E.D. Va. June 1, 2005); *see also Cumberlander v. KCL Site Servs., LLC*, No. 08-994, 2009 WL 4927144, at *9 (E.D. Va. Dec. 17, 2009). Plaintiff's Complaint requests $3,087,258.36 in unpaid principal, accrued and unpaid interest, late fees, and prepayment fees (less applicable credits).[2] Because Plaintiff has sufficiently pled relief for Defendants' breach of negotiable instrument, Business Credit Agreement, and its guaranties, upon review of Plaintiff's Complaint, Motion for Default Judgment, and exhibits, this Court finds that Plaintiff has provided a sufficient basis to award damages in the amount of $3,087,258.36.

### B. Pre-Judgment Interest

Virginia law governs the award of pre-judgment interest in diversity cases. *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 633 (4th Cir. 1999) (citation omitted). Virginia Code § 8.01-382 provides that a district court "may provide for interest on any principal sum awarded, or any part thereof, and fix the period at which the interest shall commence." Whether to award pre-judgment interest is within the sound discretion of the district court. *Hitachi*, 166 F.3d at 633; *accord Dairyland Ins. Co. v. Douthat*, 248 Va. 627, 631, 449 S.E.2d 799, 801 (1994). Here, according to the Loan Documents, per diem interest accrues at a rate of $651.20

---

[2] Plaintiff's Complaint requests judgment in the total amount of $3,249,488.55 which includes: $3,087,258.36 in unpaid principal, accrued and unpaid interest, late fees, and prepayment fees (less applicable credits); $126,926.82 in attorneys' fees; and $35,303.37 in costs and collection expenses; plus per diem interest from August 1, 2013 in the amount of $651.20 per day. (Compl. Prayer for Relief.) On December 27, 2013, Plaintiff provided a Notice to the Court stating that it is no longer seeking an award of attorneys' fees and costs in this matter. (See Notice; Dkt. No. 18.).

per day. Based on the underlying record and circumstances of this case, the undersigned finds

that an award of pre-judgment interest is appropriate in this case. Accordingly, the undersigned

recommends an award of pre-judgment interest at the rate of $651.20 per day to be calculated

from August 1, 2013.

## C. Post-Judgment Interest

In a diversity case, awards of post-judgment interest are governed by federal law.

*Hitachi*, 166 F.3d at 633 (citing *Forest Sales Corp. v. Bedingfield*, 881 F.2d 111, 113 (4th Cir.

1989)). The applicable federal statute provides, in relevant part, that

> Interest shall be allowed on any money judgment in a civil case recovered in a
> district court. . . . Such interest shall be calculated from the date of the entry of
> the judgment, at a rate equal to the weekly average 1-year constant maturity
> Treasury yield, as published by the Board of Governors of the Federal Reserve
> System, for the calendar week preceding the date of the judgment.

28 U.S.C. § 1961(a). As a matter of law, Plaintiff is entitled to an award of post-judgment

interest, *Hitachi*, 166 F.3d at 633, and therefore, the undersigned recommends such an award

pursuant to 28 U.S.C. § 1961(a).

## D. Legal Fees

On December 27, 2013, Plaintiff provided a Notice to the Court stating that it is no longer

seeking an award of attorneys' fees and costs in this matter.[3] (*See* Notice; Dkt. No. 18.) In this

Notice, Plaintiff confirmed that it now only "seeks the amounts due and owning under the

subject loan documents in the total amount of $3,087,258.36, reflecting unpaid principal,

interest, late fees, and prepayment fees (less applicable credits)." (*See* Notice; Dkt. No. 18.)

---

[3] In its Complaint, Motion for Default Judgment, and supporting affidavits, Plaintiff requested attorneys' fees and costs in the amount of $162,230.19, which included $126,926.82 in attorneys' fees, and $35,303.37 in costs and expenses. (Compl. Prayer for Relief; Mot. for Default J. ¶ 6; Walsh Decl. ¶ 14.)

15

## V.  RECOMMENDATION

For the reasons set forth above, the undersigned Magistrate Judge recommends that Plaintiff's Motion for Default Judgment be GRANTED, and default judgment be entered against Defendants, TPI Group, TPI Mortgage, TPI Financial, and Taxplus.  Accordingly, the undersigned Magistrate Judge recommends that an order be entered awarding Plaintiff damages against Defendants jointly and severally in the amount of $3,087,258.36 in unpaid principal, accrued and unpaid interest, late fees, and prepayment fees (less applicable credits). Furthermore, the undersigned recommends that the judgment also include pre-judgment interest, beginning on August 1, 2013 at a rate of $651.20 per day, and post-judgment interest at the legal rate.

## VI. NOTICE

**By mailing copies of this Report and Recommendation, the parties are notified as follows.  Objections to this Report and Recommendation must, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, be filed within fourteen (14) days of service on you of this Report and Recommendation.  A failure to file timely objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.**

The Clerk is directed to send a copy of this Report and Recommendation to counsel of record and to Defendants.

                                                            /s/
                                          Ivan D. Davis
                                          United States Magistrate Judge

March 25, 2014
Alexandria, Virginia